1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BRIGHT LITE STRUCTURES, LLC,

Plaintiff,

v.

BALFORM, LTD.,

Defendant.

Case No. 20-cv-00567-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 17

## INTRODUCTION

The plaintiff in this case is Bright Lite Structures, LLC ("Bright Lite LLC"), which had a contract with a non-party customer (a Czech company called IDEA Air) to supply airline seatbacks.[1] Bright Lite LLC has a UK-registered subsidiary, which manufactures its products, called Bright Lite Structures, Ltd. ("Bright Lite Ltd.").[2] (Bright Lite LLC approves and signs Bright Lite Ltd.'s supplier and customer invoices and orders.[3]) Bright Lite[4] allegedly hired

---

[1] Compl. – ECF No. 1 at 2 (¶ 2). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See id.* at 2–3 (¶ 6).

[3] *Id.*

[4] When the record is clear about which entity — Bright Lite LLC or Bright Lite Ltd. — is involved, this order specifies that. If it is unclear, the order refers to "Bright Lite" generically.

1  Balform, Ltd., a UK-registered private limited-liability manufacturing company, to manufacture

2  parts for the seatbacks.[5] For technical reasons, Balform could not manufacture the parts.[6] Bright

3  Lite LLC then sued Balform for fraudulent inducement, fraudulent concealment, and intentional

4  interference with prospective economic advantage, alleging that Balform knowingly

5  misrepresented that it could make the parts.[7]

6  　　Balform moved to dismiss the complaint for lack of personal jurisdiction and under the

7  doctrine of forum non conveniens on the ground that the business relationship was between Bright

8  Lite Ltd. and Balform, both British companies, for Balform's work in the UK.[8] It also moved to

9  dismiss the complaint on the ground that Bright Lite failed to plead fraud with particularity under

10  Federal Rule of Civil Procedure 9(b).[9] Because Balform did not purposefully direct its acts to

11  California, the court grants the motion to dismiss for lack of personal jurisdiction.

12

13  **STATEMENT**

14  **1.  The Complaint's Allegations About the Alleged Fraud**

15  　　Bright Lite LLC is a Delaware limited-liability company with its principal place of business in

16  San Francisco, California.[10] Its wholly owned subsidiary is its manufacturing facility in the UK,

17  Bright Lite Ltd., a UK-registered limited-liability company.[11] Balform is a UK-registered private

18  limited-liability company.[12]

19

20

21

22  _____

[5] *Id.* at 2–3 (¶ 6).

23  [6] *Id.* at 4–8 (¶¶ 12–41).

24  [7] *Id*. at 2 (¶ 2), 6–7 (¶¶ 25–36), 8–11 (¶¶ 42–65).

[8] Mot. – ECF No. 17 at 8–9.

25  [9] *Id.*

26  [10] Compl. – ECF No. 1 at 2 (¶ 5).

27  [11] *Id.* at 2–3 (¶ 6).

[12] *Id.* at 3 (¶ 7).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IDEA Air hired Bright Lite LLC to supply airline seatbacks.[13] Bright Lite in turn hired Balform to manufacture parts for the seatbacks.[14] As part of the hiring process, Bright Lite told Balform about the project, its timeline for the initial production (by August 2019 to allow safety testing by the EU Aviation Safety Testing Agency), and its manufacturing needs (including a manufacturing process that required heating (via a "tool") to 310 degrees Celsius.[15] Bright Lite's purchase orders "identif[ied] the laws of the State of California, USA, as governing any dispute concerning the order" for the parts.[16]

Balform said that it could manufacture the products on Bright Lite LLC's timeline and according to its specifications, knew the specifications (including the "tool" specifications), and knew about the temperature requirement.[17] Bright Lite LLC gave Balform the CAD (computer-aided design) file for the tool (with the specifications for the tool and the project), and Balform performed trials about the heating and confirmed on April 4, 2019 that it "should be able to get [its] machines to cycle at 310 degrees C, which is great news!"[18] Bright Lite LLC relied on that representation (and Balform's touting of its expertise on its website), and it believed that Balform could perform, especially because Balform never said that it could not perform and never said that its equipment could not accommodate the weight of the tool (the technical issue that ultimately resulted in Balform's inability to deliver the parts).[19]

Bright Lite LLC delivered the "tool" to Balform on August 1, 2019, and the delivery note (signed by Balform) showed that Bright Lite LLC issued the delivery note (as evidenced by its

---

[13] *Id.* at 4 (¶ 12).

[14] *Id.* (¶¶ 13–14) ("Between April 16, 2019 and July 29, 2019, [Bright Lite LLC] issued multiple purchase orders directly to [Balform] for materials related to the project." Bright Lite LLC issued, and Bright Lite LLC's CEO authorized, the purchase orders.).

[15] *Id.* at 4 (¶¶ 12–18)

[16] *Id.* (¶ 16).

[17] *Id.* at 5 (¶ 19).

[18] *Id.* (¶¶ 20–21).

[19] *Id.* at 5–6 (¶¶ 22–24).

name and logo).[20] After it received the tool, Balform told Bright Lite LLC that Balform's manufacturing equipment could not accommodate the tool's weight and size, which — given that Balform had the tool's specifications — was a surprise to Bright Lite.[21] Balform said that it could modify the tool to reduce the weight (by hollowing out parts of the tool) and produce the products on time, and — when Bright Lite LLC said that it was concerned about that approach because the tool was expensive — Balform said that it was "100% sure" that the modifications would solve the issues.[22] In late August 2019 — two months after Bright Lite LLC gave Balform the specifications to manufacture the parts and weeks after the production deadline — Bright Lite LLC's Chief Technology Officer and Managing Director visited Balform's manufacturing plant, and Balform admitted that it was not able to manufacture the parts.[23] Balform returned the (modified and thus damaged) tool, Bright Lite LLC tried to fix the tool, it could not, and thus it had to order a replacement tool.[24] This delay caused Bright Lite LLC to default on its delivery commitment to IDEA Air, and it thus lost all sales to IDEA Air in 2019.[25]

## 2. Other Evidence About the Parties' Places of Business and General Operations

Balform is a UK-registered private limited-liability manufacturing company.[26] Its manufacturing operations take place in the UK, and its employees all work there.[27] It has no offices, agents for service of process, assets, officers, or employees in the U.S., and it is not

---

[20] *Id.* at 6 (¶ 25).

[21] *Id.* (¶¶ 26–27).

[22] *Id.* (¶¶ 29–31).

[23] *Id.* at 6–7 (¶¶ 32–33).

[24] *Id.* at 7 (¶¶ 34–38).

[25] *Id.* at 7–8 (¶¶ 38–41).

[26] Young Decl. – ECF No. 17-1 at 2 (¶ 3). In assessing personal jurisdiction, the court considers the parties' evidence, does not consider hearsay in the declarations, and to that extent, grants in part Bright Lite LLC's objections to the Young supplemental declaration. Pl. Objs. – ECF No. 24.

[27] Young Decl. – ECF No. 17-1 at 2–3 (¶¶ 5–13).

United States District Court
Northern District of California

United States District Court
Northern District of California

licensed to do business here.[28] It "does not directly solicit" business in the U.S., and it has only two U.S.-based customers, but neither is in California.[29] Most of its sales are in the UK.[30] It "does not target its website [www.balform.co.uk] or social-media pages to California or anywhere else in the United States."[31] It has never sued anyone here or (before this lawsuit) been sued here.[32]

Bright Lite LLC is a design and manufacturing company that developed a patented composite carbon-fiber technology and now supplies composite carbon-fiber components to aerospace, commercial-vehicle, transportation, rail, and auto manufacturers. The technology allows the production of large and complex parts that weigh up to 55% less than steel, 35% less than aluminum, and 20% less than conventional carbon-fiber products. Its "unique ability to create hybrid thermoplastic (the issue here) and thermoset products assists companies in meeting the demanding Federal Aviation Administration and European Rail standards." As a result, "vendors and suppliers from around the world solicit [Bright Lite] for opportunities to partner with [it] and use its award-winning technology," and Bright Lite supplies its products to "well-known companies around the world, looking for unique solutions that no other company can match."[33]

Bright Lite LLC is a Delaware limited-liability company with its company headquarters and offices in San Francisco, California.[34] Its CEO, Rick Holman, lives and works in San Francisco.[35] His company's headquarters have been here in San Francisco since the company's inception in 2014 (at the South Park address listed with the California Secretary of State). Since at least the first quarter of 2018, he "and several staff have physically worked" at commercial space that he

---

[28] *Id.* (¶¶ 6–7, 9–12).

[29] *Id.* (¶ 8).

[30] *Id.*

[31] *Id.* (¶¶ 8–9).

[32] *Id.* at 3 (¶ 13).

[33] Holman Decl. – ECF No. 21-1 at 2 (¶¶ 2–3).

[34] *Id.* (¶ 4).

[35] *Id.* (¶ 1).

leases at 350 Brannon Street, also in San Francisco.[36] (Balform points out that the only public-record addresses are the South Park address (a condominium) and a mailing address in Los Angeles (a law firm address).)[37]

Bright Lite LLC's San Francisco location has allowed it access to technology companies and technology innovators and has given it the ability to develop good relationships with technology companies, particularly those in the aerospace and automobile industries.[38] Multiple "EV" (or electric vehicle) companies — including Tesla and Zoox, among other local companies — have approached Bright Lite LLC for assistance and to work on projects involving the use of carbon-fiber components.[39] Its investors include well-known San Francisco-based angel investors.[40]

Bright Lite handles the following business from its San Francisco headquarters.

. . . [Bright Lite LLC's] employees and officers handle all company administrative operations, interface with all customers, vendors, and suppliers (like Balform), and control and oversee [Bright Lite's] manufacturing facility, located in the United Kingdom (which manufactures products exclusively for and at the direction of [Bright Lite LLC]. . . . [Its] employees also handle all legal, bookkeeping, accounting, taxation, import/export, marketing, and social media. . . . [Its] company records are maintained and kept in San Francisco.

. . . [Bright Lite LLC's] employees and officers also handle all financial operations. Bright Lite LLC] has two bank accounts: a Wells Fargo bank account in San Francisco and an HSBC account in the UK. The HSBC account is funded by the Wells Fargo account. The HSBC account was opened because of UK employment and tax regulations. Almost all payments from customers, and almost all vendors, are paid to and from the Wells Fargo account in San Francisco, California. Occasionally funds are transferred from the Wells Fargo account to the HSBC account to pay UK vendors, but the HSBC account is primarily to meet payroll and tax requirements. Regardless of where a vendor or customer is located, all funding for payments comes from San Francisco, and all payments are authorized by [the CEO], from [Bright Lite LLC's] office in San Francisco.[41]

---

[36] *Id.* at 2–3 (¶ 4).

[37] Reply – ECF No. 22 at 11.

[38] Holman Decl. – ECF No. 21-1 at 3 (¶ 5).

[39] *Id.*

[40] *Id.*

[41] *Id.* at 3 (¶¶ 6–7).

Bright Lite LLC's wholly owned subsidiary Bright Lite Ltd. is in the UK and manufactures Bright Lite products. Bright Lite LLC set up the subsidiary to comply with UK labor laws that govern its UK employees. Its UK manufacturing facility also allows it to (1) serve customers around the world, (2) minimize shipping costs, and (3) and hire vendors and supplies, like Balform, to work on projects that otherwise would be too costly.[42]

Bright Lite LLC's San Francisco-based CEO is the only company officer authorized to engage suppliers and enter into commercial contracts. Only he can make disbursements from, and have access to, the company's bank accounts. The UK subsidiary does not invoice customers or provide purchase orders to customers or vendors. "All business activities are conducted by [Bright Lite LLC], and more specifically are signed or approved by [the CEO] in California."[43]

Bright Lite LLC "operates a website at www.blstructures.com, which was designed and managed from San Francisco."[44] When the website first launches, it lists "Bright Lite Structures, LLC" at two addresses: the first in Stamford, Lincolnshire (in the UK) and the second at the South Park address in San Francisco. It has a video on its home page that describes its products, narrated by someone with a British accent.[45] Under "Contact Us," it lists the UK address and the UK telephone numbers and the names and emails of two Directors of Business Development and Antony Dodworth, the Chief Technical & Manufacturing Officer.[46] Mr. Dodworth is the co-founder (with Mr. Holman) of Bright Lite LLC, works in the UK, and visits San Francisco once or twice a year for board meetings and to meet suppliers.[47] Allen Camp, the director of

---

[42] *Id.* at 4 (¶ 9).

[43] *Id.* (¶ 10).

[44] *Id.* at 3–4 (¶ 8).

[45] *See* Bright Lite Website, Ex. 2 to Holman Decl. – ECF No. 21-3 at 25 (http://.blstructures.com) (last visited Apr. 30, 2020). Although it does not appear in the website screenshots that Bright Lite submitted, the South Park address appears on the homepage of the Bright Lite LLC website.

[46] *Id.*

[47] Dodworth Decl. – ECF No. 21-8 at 2 (¶ 1), 4 (executed declaration from the UK).

manufacturing for Bright Lite Ltd., also works in the UK.[48] In a March 2020 version of the website, in the FAQ section titled "Where is BLS located?", the answer is, "The BLS manufacturing site is located an hour north of London."[49]

### 3. The Parties' Business Relationship

In early 2019, IDEA Air hired Bright Lite LLC to supply aircraft seatbacks.[50] For the "development" phase of the project, Bright Lite LLC needed ten "thermoplastic seatback skins" to deliver for safety testing (to take place in early September 2019).[51] IDEA Air thereafter planned to order 660 more seatbacks from Bright Lite LLC.[52] Bright Lite LLC needed to source the seatback skins from a supplier and ultimately worked with Balform. The next three sections describe the parties' initial meeting about the project, Balform's subsequent work (and its inability to manufacture the skins), and the parties' resulting disputes leading to this lawsuit.

### 3.1 The Parties' Initial Meeting

In early April 2019, Mr. Dodworth and Mr. Camp attended the Aircraft Interiors Expo in Hamburg, Germany, to support IDEA Air and to meet with potential suppliers for the seatback skins.[53] There, they met with Mark Young, Balform's managing director (but dispute who initiated the meeting: Balform or Bright Lite).[54]

---

[48] Camp Decl. – ECF No. 21-9 at 4 (same); *see also* April 2019 Email, Ex. A to Young Decl. – ECF No. 17-2 at 2 (Mr. Camp's signature block lists the UK address).

[49] Bright Lite Website on 3/12/2020, Ex. 4 to Young Decl. – ECF No. 17-9 at 16.

[50] Holman Decl. – ECF No. 21-1 at 4 (¶ 11) (IDEA Air hired Bright Lite LLC in "early 2019"); *cf.* Compl. – ECF No. 1 at 4 (¶ 12) (IDEA Air hired Bright Lite LLC in June 2019).

[51] Holman Decl. – ECF No. 21-1 at 4 (¶ 11).

[52] *Id.*

[53] Camp Decl. – ECF No. 21-9 at 2 (¶ 3).

[54] Dodworth Decl. – ECF No. 21-8 at 2 (¶ 4); Camp Decl. – ECF No. 21-9 at 2 (¶ 3), 2–3 (¶ 5); *cf.* Young Supp. Decl. – ECF No. 22-1 at 2 (¶ 5) (on March 27, 2019, Mr. Camp hired Balform to work on flooring for grocery-delivery trucks; Balform completed the project in April 2019). The dispute about who arranged the April meeting — *compare* Camp Decl. – ECF No. 21-9 at 2 (¶ 3) *with* Rosser Decl. – ECF No. 22-2 at 2 (¶ 3); *see also* Young Decl. – ECF No. 17-1 at 3 (¶¶ 14–15) — is a modest point. The more relevant inquiry is the nature and extent of the parties' contacts, beginning with Mr.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Mr. Dodworth and Mr. Camp explained Bright Lite LLC's business to Mr. Young, advising him that the company was based in San Francisco, Mr. Dodworth's business partner Rick Holman was the CEO and ran the business from San Francisco, and Mr. Dodworth ran design and manufacturing from the UK.[55] They explained that Mr. Holman reviewed and approved all purchase orders and invoices in San Francisco.[56] (Mr. Young recalls no conversation about the San Francisco connection, either at this meeting or any time.[57]) They discussed the seatback project for IDEA Air, the need for a thermoplastic seatback skin, Bright Lite LLC's interest in finding a manufacturer to produce that skin, the need to use the "tool" (heated to 310 degrees Celsius) to make the skin, and the timing (to allow IDEA Air to obtain the appropriate safety certifications and Balform to manufacture the seatbacks by fall 2019).[58] Mr. Young said that he would confirm whether Balform could heat its machines to 310 degrees Celsius, and on April 4, 2019, he confirmed by email that it could.[59]

### 3.2   Balform's Work

In August 2019, Balform determined that it could not manufacture the seatback skins.[60] But before that date — during the period from at least April 16, 2019 to July 29, 2019 — Balform performed technical trials on the seatback project and also worked on flooring for grocery-delivery trucks.[61] Balform's work on the seatback project included the following events.

---

Camp's previous working relationship with Balform at his last job, and continuing with the parties' ongoing working relationship from late March or early April to August 2019.

[55] Dodworth Decl. – ECF No. 21-8 at 2 (¶ 4); Camp Decl. – ECF No. 21-9 at 2 (¶ 4).

[56] Dodworth Decl. – ECF No. 21-8 at 3 (¶ 8); Camp Decl. – ECF No. 21-9 at 3 (¶ 8).

[57] Young Supp. Decl. – ECF No. 22-1 at 2–3 (¶¶ 6–9).

[58] Dodworth Decl. – ECF No. 21-8 at 2–3 (¶¶ 5–6)); Camp Decl. – ECF No. 21-9 at 2–3 (¶ 5–6); Young Decl. – ECF No. 22-1 at 2–3 (¶ 6).

[59] Dodworth Decl. – ECF No. 21-8 at 3 (¶ 7); Camp Decl. – ECF No. 21-9 at 3 (¶ 4).

[60] Dodworth Decl. – ECF No. 21-8 at 4 (¶ 12); Camp Decl. – ECF No. 21-9 at 4 (¶ 12).

[61] Compl – ECF No. 1 at 4 (¶ 14); Young Decl. – ECF No. 17-1 at 3–4 (¶¶ 16–19) (describing technical trials for the seatback project); Young Supp. Decl. – ECF No. 22-1 at 2 (¶ 5) (on March 27, 2019, Mr. Camp asked Balform to work on flooring for grocery-delivery trucks, and Balform completed the work in April 2019).

1      Balform sent Mr. Holman its "Balform New Customer Application Form," which Mr. Holman

2   signed (adding "LLC") and sent back to Mr. Young on April 18, 2019.[62] Mr. Holman sent three

3   purchase orders to Balform from April 16, 2019 to July 29, 2019.[63] The record has one Bright Lite

4   Structures (no LLC) purchase order dated April 16, 2019 with Mr. Holman's signature over a

5   signature line reading "Authorized by: R. Holman."[64] The purchase order identifies Mr. Holman

6   and James Flynn (Bright Lite's San Francisco-based Finance & Procurement Manager) as the

7   recipients for "Invoicing and Documentation," lists Mr. Flynn's area code 510 telephone number

8   (an East Bay area code), and includes SWIFT and IBAN numbers (confirming that payment is

9   made from an international bank account, not a UK account) and also a SORT number (used by

10   UK banks to identify accounts).[65] The purchase order's terms and conditions define "BLF" as

11   "Bright Lite Structures, LLC or any specified subsidiary of Bright Lite Structures LLC including

12   Bright Lite Structures ltd. (UK)."[66] The terms include a section called "Applicable Law" that

13   provides that California law governs the order "without regard to choice of law principles" and

14   excludes the application of the UN Convention on the International Sales of Goods.[67] Bright Lite

15   LLC's purchase orders always include these terms.[68] Balform contends that it did not know that

16   purchase orders came from San Francisco and thought it was dealing with a UK company.[69]

17      In April and May 2019, Balform conducted small-scale technical trials, and it told Mr. Camp

18   about limitations and issues that might arise.[70] Mr. Camp acknowledged that the parties' future

19   relationship would be discussed during a visit to Balform's UK facility after the results of the

20

21   _____

22   [62] Holman Decl. – ECF No. 21-1 at 5 (¶ 14).

    [63] *Id.* at 9 (¶ 31) (citing June 24, 2019 Email, Ex. 4 to Holman Decl. – ECF No. 21-5).

23   [64] Purchase Order, Ex. B to Young Decl. – ECF No. 17-3 at 2.

24   [65] *Id.*; Holman Decl. – ECF No. 21-1 at 9–10 (¶¶ 32, 35).

    [66] Purchase Order, Ex. B to Young Decl. – ECF No. 17-3 at 3 (§ 2).

25   [67] *Id.* at 5 (§ 16).

26   [68] Holman Decl. – ECF No 21-1 at 9–10 (¶ 32).

    [69] *See, e.g.*, Young Supp. Decl. – ECF No. 22-1 at 4–5 (¶ 14).

27   [70] Young Decl. – ECF No. 17-1 at 4 (¶¶ 17–18).

28

technical trials.[71] On June 25, 2019, and again on July 18, 2019, Bright Lite LLC gave Balform the CAD files for the tool, which included its dimensions, specifications, steel composition, and weight.[72] According to Balform, the technical trials expanded in scale from June 2019 to August 2019.[73] From San Francisco, Mr. Holman ordered and paid for the tool to manufacture the seatback skins.[74] Mr. Camp sent the tool to Balform on August 1, 2019.[75] Mr. Young believes that the tool was manufactured in Italy.[76] On August 9, 2019, Mr. Young emailed Mr. Camp to tell him that Balform's manufacturing equipment could not accommodate the tool's size and weight.[77] Mr. Young said that he could address the issue by cutting holes through the tool to reduce its weight and that "he was confident that this would work."[78] The modification allowed Balform to put the tool on its manufacturing equipment.[79] But Balform was unable to heat the tool to 310 degrees Celsius and thus could not manufacture the seatback skins.[80]

According to Bright Lite LLC, it issued three purchase orders (and Balform accepted them) from April 16, 2019 to July 29, 2019, all relating to the seatback-skins project.[81] It submitted an email chain dated June 24, 2019 transmitting and acknowledging a purchase order (but not the order itself).[82] According to Balform, Bright Lite LLC never issued purchase orders, and Balform never issued invoices, for any work on the seatback-skins project.[83] Instead, it says, the only

---

[71] Id. (¶ 18).

[72] Holman Decl. – ECF No. 21-1 at 5–6 (¶ 15); Camp Decl. – ECF No. 21-9 at 3 (¶ 9).

[73] Young Decl. – ECF No. 17-1 at 4 (¶ 19).

[74] Holman Decl. – ECF No. 21-1 at 6 (¶ 16).

[75] Young Decl. – ECF No. 17-1 at 4 (¶ 20).

[76] Id.

[77] Id. (¶ 21); Camp Decl. – ECF No. 21-9 at 3 (¶ 10).

[78] Camp Decl. – ECF No. 21-9 at 4 (¶ 11).

[79] Dodworth Decl. – ECF No. 21-8 at 4 (¶ 12).

[80] Id.; Camp Decl. – ECF No. 21-9 at 4 (¶ 12).

[81] Holman Decl. – ECF No. 21-1 at 9 (¶ 31).

[82] Email Chain, Ex. 4 to Holman Decl. – ECF No. 21-5 at 2–3.

[83] Young Supp. Decl. – ECF No. 22-1 at 4 (¶ 13).

invoices and orders were for the truck-flooring order, an unrelated project.[84] There is one order in the record, the April 16, 2019 order (discussed above), which lists products (two 1.5mm Black ABS and set-up charges in the form of "Rout Board & CNC Programs") and a total due of £678.35.[85] Bright Lite LLC says that it is for the seatback-skins project; Balform says that it is for the flooring project.[86] The court cannot tell definitively (but expects that the answer is obvious to the parties given the products identified on the purchase order).

### 3.3   The Parties' Subsequent Disputes About Invoices and Damages

Balform's finance manager Steven Leighton emailed Mr. Holman on October 7, 2019 and again on October 10, 2019, asking Bright Lite LLC to pay its outstanding invoices (and provided IBAN and SWIFT payment information).[87] In a follow-up email on October 15, 2019, he expressed disappointment at the lack of response and said that if Bright Lite LLC did not send payment, Balform "will have to consider legal action for recovery of the debt."[88] On November 5, 2019, he emailed Charlotte Woolf (at Bright Lite Ltd.) with a cc to Mr. Holman, again asking for payment of the outstanding invoices and saying that if Balform did not "receive your settlement within the next 7 days, we will refer it to our legal team for collection."[89] Mr. Holman responded on November 5, 2019 with his own invoice for £12,000 for the repair costs for the tool.[90] (He previously sent the invoice to Mr. Young on October 16, 2019. The invoice identifies the vendor as Mr. Holman at Bright Lite Ltd. (at the UK address) and has wiring instructions for payment to Bright Lite LLC's Wells Fargo account in San Francisco.[91]) On November 5, 2019, Mr. Leighton responded, "We have issued our response rejecting your claim," apparently referring to Mr.

---

[84] *Id.*

[85] Invoice, Ex. B to Young Decl. – ECF No. 17-3 at 2.

[86] Holman Decl. – ECF No. 21-1 at 9 (¶ 32); Young Supp. Decl. – ECF No. 22-1 at 4 (¶ 13).

[87] Holman Decl. – ECF No. 21-1 at 10 (¶ 35); Emails, Ex. 5 to Holman Decl. – ECF No. 21-6 at 2–4.

[88] Email, Ex. 5 to Holman Decl. – ECF No. 21-6 at 2.

[89] *Id.* at 6.

[90] *Id.* at 5–6; Invoice, Ex. 6 to Holman Decl. – ECF No. 21-7 at 6.

[91] Invoice, Ex. 6 to Holman Decl. – ECF No. 21-7 at 6.

Young's rejection of the invoice on October 23, 2019, and again demanded payment in seven days or "we will commence legal proceedings for recovery of our contractual debt."[92]

### 4.  Relevant Procedural History

On January 24, 2020, Bright Lite LLC sued Balform for fraudulent inducement, fraudulent concealment, and intentional interference with prospective economic advantage.[93] It seeks compensatory damages (for replacement of the tool and its lost sales to IDEA air) and punitive damages.[94] The parties' citizenship is diverse, and the amount in controversy is more than $75,000, resulting in the court's diversity jurisdiction.[95] 28 U.S.C. § 1332(a)(2). Balform moved to dismiss the complaint for lack of personal jurisdiction, under the doctrine of forum non conveniens, and for Bright Lite LLC's failure to plead fraud with particularity under Rule 9(b).[96] It will "consent to service of process in the UK for an action in an English court."[97] Both parties consented to magistrate jurisdiction.[98] The court held a hearing on May 7, 2020.

### ANALYSIS

The parties dispute (1) whether Balform is subject to personal jurisdiction, (2) whether the court should decline to exercise jurisdiction under the doctrine of forum non conveniens, and (3) whether Bright Line LLC pleaded fraud with particularity under Rule 9(b). Because Balform did not purposefully direct its acts to California, Balform is not subject to personal jurisdiction here.

"'In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059,

---

[92] Email, Ex. 5 to Holman Decl. – ECF No. 21-6 at 5; Email, Ex. 6 to Holman Decl. – ECF No. 21-7 at 2 (also setting forth Balform's position that "the project was always a R&D exercise. . . .").

[93] Compl. – ECF No. 1 at 2 (¶ 2), 6–7 (¶¶ 25–36), 8–11 (¶¶ 42–65).

[94] *Id.* at 11.

[95] *Id*. at 3 (¶ 9).

[96] Mot. – ECF No. 17 at 8–9.

[97] Young Supp. Decl. – ECF No. 22-1 at 5 (¶ 18).

[98] Consents – ECF Nos. 8, 16.

United States District Court
Northern District of California

1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th

Cir. 2011)). The parties may submit, and the court may consider, declarations and other evidence

outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*,

248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v.*

*Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2001).

   "'Where, as here, the defendant's motion is based on written materials rather than an

evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to

withstand the motion to dismiss.'" *Ranza*, 793 F.3d at 1068 (some internal quotation marks

omitted) (quoting *CollegeSource*, 653 F.3d at 1073). "[U]ncontroverted allegations must be taken

as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in

the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

(9th Cir. 2004)). But courts "may not assume the truth of allegations in a pleading which are

contradicted by affidavit[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th

Cir. 2011) (internal quotation marks omitted) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

557 F.2d 1280, 1284 (9th Cir. 1977)); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not

simply rest on the 'bare allegations of the complaint.'") (internal brackets omitted) (quoting

*Schwarzenegger*, 374 F.3d at 800).

   In diversity cases, "'federal courts ordinarily follow state law in determining the bounds of

their jurisdiction over persons.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting

*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "The general rule is that personal jurisdiction

is proper if permitted by a long-arm statute and if the exercise of that jurisdiction does not violate

federal due process." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2005) (analyzing

the California and federal long-arm statutes). "Because 'California's long-arm statute allows the

exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' [a

court's] inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780

F.3d at 1211 (quoting *Daimler*, 571 U.S. at 125). The due-process inquiry is whether the

defendant has sufficient minimum contacts with the forum such that the assertion of jurisdiction in

United States District Court
Northern District of California

1    the forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*,

2    453 F.3d at 1154–55 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

3    "There are two types of personal jurisdiction: general and specific." *Bristol-Myers Squibb Co.*

4    *v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017).

5    Bright Line LLC argues only that Balform is subject to specific jurisdiction.[99]

6    "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to

7    the defendant's contacts with the *forum*." *Id.* at 1780 (emphasis in original, internal quotation

8    marks omitted). "In other words, there must be an affiliation between the forum and the

9    underlying controversy, principally, an activity or an occurrence that takes place in the forum State

10   and is therefore subject to the State's regulation." *Id.* (internal brackets omitted). "For this reason,

11   specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the

12   very controversy that establishes jurisdiction." *Id.* (quotation omitted). The Ninth Circuit employs

13   a three-prong test to assess whether a defendant has sufficient contacts with the forum to be

14   subject to specific personal jurisdiction:

15       (1) The non-resident defendant must purposefully direct his activities or consummate some
16       transaction with the forum or resident thereof; or perform some act by which he
         purposefully avails himself of the privilege of conducting activities in the forum, thereby
17       invoking the benefits and protections of its laws;

18       (2) the claim must be one which arises out of or relates to the defendant's forum-related
         activities; and

19       (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
20       must be reasonable.

21   *Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Id.* at

22   1211–12. "If he does so, the burden shifts to the defendant to set forth a 'compelling case' that the

23   exercise of jurisdiction would not be reasonable.'" *Id.* at 1212 (quoting *Burger King Corp. v.*

24   *Rudzewicz*, 471 U.S. 462, 477 (1985)).

25   With respect to the first prong, courts generally apply a "purposeful availment" analysis in

26   suits sounding in contract and a "purposeful direction" analysis (also known as the "effects test")

27

28   [99] Opp'n – ECF No. 21 at 17 n.2.

United States District Court
Northern District of California

in suits sounding in tort (including claims of fraud). *Schwarzenegger*, 374 F.3d at 802; *see RHUB Commc'ns, Inc. v. Karon*, 16-cv-06669-BLF, 2017 WL 3382339, at *5 (N.D. Cal. Aug 7, 2017). Bright Lite LLC contends that Balform purposefully directed its activities here.[100]

In the next sections, the court examines the three prongs of specific jurisdiction: (1) purposeful direction; (2) Balform's forum-related contacts; and (3) the reasonableness of exercising jurisdiction.

### 1. Purposeful Direction

Under the *Calder* "effects test," purposeful direction exists when a defendant commits an act outside the forum that was intended to and does in fact cause injury in the forum, meaning, the defendant must (1) commit an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984); *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (quoting *Mavrix*, 657 F.3d at 1228), *abrogated on other grounds as recognized in Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The "effects test" focuses on "the forum in which the defendant's acts were felt, whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228. "However, referring to the *Calder* test as an 'effects' test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong — the effects prong — holding that 'something more' is needed in addition to a mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1156 (citation omitted).

Bright Lite LLC cites the following facts to support its contention that Balform expressly aimed its intentional acts (the alleged fraud) at California to cause likely harm here: (1) Bright Lite LLC's headquarters (and brain center) are in San Francisco; (2) its handling of administrative operations (including purchase orders and invoices) are here; (3) it controls Bright Lite Ltd. from here; (4) Balform solicited its business, and as a result, the parties formed a business relationship;

---

[100] *Id.* at 18.

(5) the parties had communications to and from San Francisco, including purchase orders sent from San Francisco, Balform's related invoices, and Balform's email efforts to collect payment; and (6) Balform's conduct (in the form of its alleged fraud ) resulted in harm in the forum.[101]

These facts do not satisfy the effects test. This case involves an alleged fraud during a business relationship that took place entirely outside of the United States. As in *Picot*, there were no misrepresentations here and no acts aimed here. *See* 780 F.3d at 1215; *accord Ezra v. Weitz & Luxenberg P.C.*, No. 2:16-cv-00486-RFB-PAL, 2018 WL 4279216, at * 5 (D. Nev. July 2, 2018) (no express aiming, and no personal jurisdiction, where the fraud took place in New York, even though the plaintiff was injured in Nevada, and a tolling agreement was sent to her there).

The parties dispute whether Balform knew about Bright Lite LLC's California connection. Assuming Bright Lite LLC's account of Balform's knowledge, that knowledge does not establish that Balform aimed its acts at California and caused harm here.

While a theory of individualized targeting may be relevant to the minimum-contacts analysis, what matters is the "defendant's contacts" with the forum. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *Axiom Food*, 874 F.3d at 1070; *Picot*, 780 F.3d at 1214–15. The only participants in any encounter were two British companies: Balform and Bright Lite Ltd. Their negotiations were in Europe. All testing took place in the UK for a project involving a Czech end user. The alleged misrepresentations occurred in the UK. The financial brains of the operation may be in San Francisco (in the form of Mr. Holman), but the manufacturing brains (in the form of Mr. Dodworth) are in the UK.

In *Picot*, the court addressed a somewhat analogous situation. 780 F.3d at 1215. There, a California-based plaintiff sued a Michigan resident for tortious interference with a sales contract. *Id.* at 1209–10. The parties previously had worked closely together to develop an electrolyte technology, and the defendant traveled to California as part of that working relationship. *Id.* at 1210. When the plaintiff tried to sell the technology, the defendant made misrepresentations (all in Michigan) to derail the sale. *Id.* The misrepresentations were made in Michigan to a third party in

---

[101] *Id.* at 10–15 (citing Holman, Dodworth, and Camp Decls., ECF Nos. 21-1, 21-8, & 21-9), 17.

1    Ohio that caused the purchasing corporation (a Delaware corporation with offices in Ohio) to stop

2    paying the California plaintiff. *Id.* at 1215. The Ninth Circuit thus affirmed the district court's

3    dismissal for lack of personal jurisdiction, finding that there was an insufficient connection to

4    California because the misrepresentations took place entirely outside of California. *Id.*

5        Balform's contacts with California are even more attenuated than the contacts in *Picot*: there is

6    no close collaboration here with a California-based plaintiff. Nothing happened here except the

7    three purchase orders[102] and Balform's emails (after the failed tests) to Mr. Holman asking for

8    payment on the outstanding invoices (apparently because a UK-based Bright Lite Ltd. employee

9    named Charlotte Wolfe referred Balform to Mr. Holman).[103] When courts find personal

10   jurisdiction in misrepresentation cases, there are more extensive, direct misrepresentations to

11   California-based personnel. *See, e.g.*, *Cisco Sys. Inc. v. ST Microelectronics, Inc.*, No. 14-cv-

12   03236-RMW, 2015 WL 5138556, at *1, 4 (N.D. Cal. Sept. 1, 2015) (Italian chip manufacturer

13   manufactured chips in Europe and Asia for Cisco (a California corporation with other domestic

14   and international offices) that resulted in a high failure rate of cable boxes that Cisco sold in India;

15   acts were expressly aimed at the forum because the Italian manufacturer made direct

16   misrepresentations to Cisco's California employees). Those misrepresentations do not exist here.

17       Bright Lite LLC also contends that "express aiming" at California is shown by the California

18   choice-of-law provision in the terms and conditions of its purchase orders[104] and Balform's

19   attempt to collect payments and threats to sue Bright Lite LLC.[105] These facts do not alter the

20   conclusion that there is no personal jurisdiction.

21       A choice-of-law provision in a contract, "while deserving of consideration, do[es] not drive the

22   analysis" of personal jurisdiction. *Artec Grp., Inc. v. Klimov*, 15-cv-03449-EMC, 2017 WL

23

24   ───────────────────

     [102] As discussed in the Statement, only one purchase order is in the record, and it is not demonstrably

25   from the United States.

     [103] Young Supp. Decl. – ECF No. 22-1 at 5 (¶ 15); Emails, Ex. 5 to Holman Decl. – ECF No. 21-6 at 3

26   ("I have just been in touch with Charlotte in respect of the outstanding invoices").

27   [104] As discussed in the Statement, there is only one purchase order in the record, it has that term, and
     Mr. Holman declares that it is in all purchase orders.

28   [105] Opp'n – ECF No. 21 at 21.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   5625934, at *6 (N.D. Cal. Nov. 22, 2017) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 482

2   (1985)). *Artec* involved a distribution agreement — negotiated outside of California — between a

3   California plaintiff and a UAE defendant for a product that came from Europe for distribution in

4   the UAE. *Id.* at *5. *Id.* The court found no personal jurisdiction. *Id.* at *7.

5        Applying *Artec* to this case results in a similar outcome: the choice-of-law provision —

6   considered in the context of the other facts — does not convey personal jurisdiction because the

7   relevant jurisdictional acts occurred entirely outside of California. Admittedly, the California

8   plaintiff in *Artec* solicited the UAE defendant's business, *id.* at *5, while here, the parties dispute

9   who solicited the other's business. That difference does not alter the outcome, in part because Mr.

10  Camp worked with Balform at his previous job, rendering irrelevant the inquiry about who

11  reached out first. Put a different way, both parties wanted to meet the other, potentially in aid of a

12  business relationship, and the issue of "who started first" is not important. Instead, what matters is

13  that the parties' negotiations and business relationship took place entirely outside of California.

14       *Gunn v. Wild* suggests the same result. 771 F. App'x 392, 392 (9th Cir. 2019). There, the court

15  held that a Nevada choice-of-law clause in a settlement agreement did not constitute purposeful

16  availment and could not be read as an agreement to resolve disputes in Nevada. *Id.* Like this case,

17  the non-Nevada defendant sent an email (a defamatory email to the plaintiff's brother in Nevada),

18  but that was not express aiming at Nevada because Nevada was not the focal point of the

19  defamation. *Id.* Applying *Gunn* to the facts here, an email to a person in the forum is not conduct

20  aimed at the forum, and the choice-of-law provision does not create specific jurisdiction. *Id.* Also,

21  the emails here — sent well after the alleged fraud — were for Balform's outstanding invoices and

22  are not the equivalent of a cease-and-desist letter. Even if they were, ordinarily cease-and-desist

23  letters do not establish personal jurisdiction over the sender unless they are abusive, tortious, or

24  wrongful. *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1208 (9th

25  Cir. 2006); *accord Barth v. All Hearts Homecare, LLC*, No. 3:18-cv-01207-CAB (JMA), 2018

26  WL 4282597, at *3 (S.D. Cal. Sept. 7, 2018) (no personal jurisdiction) (collecting cases).

27       Moreover, on these facts, the court does not find jurisdictionally significant harm in California.

28  "[I]n appropriate circumstances, a corporation can suffer economic harm both where the bad acts

occurred and where the corporation has its principal place of business." *Mavrix*, 647 F.3d at 1231–32. But Bright Lite LLC's "inability" to profit from its seatback deal with IDEA Air "is not tethered to California in any meaningful way." *Picot*, 780 F.3d at 1215. The lost access to funds is an injury that follows a plaintiff "'wherever he might choose to live or travel,'" and the effects of Balform's actions were not "connected to the forum state in a way that makes those effects a proper basis for jurisdiction.'" *Id.* (quoting *Walden*, 571 U.S. at 290).

In sum, Bright Lite LLC has not established that Balform's alleged fraud was expressly aimed at the forum and caused jurisdictionally significant harm here.

## 2. Balform's Forum-Related Activities and the Reasonableness of Exercising Jurisdiction

To determine whether a plaintiff's claims arise out of the defendant's forum-related activities, courts apply a "but-for" causation analysis, meaning, the plaintiff would not have been injured "but for" the defendant's acts in the forum. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000); *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The analysis above applies here too: nothing jurisdictionally significant happened in California.

Because Bright Lite LLC did not establish the first two prongs (purposeful direction and Balform's forum-related activities), the burden does not shift to Balform to establish the third prong (the reasonableness of exercising jurisdiction). *Picot*, 780 F.3d at 1211–12.

## CONCLUSION

The court grants Balform's motion to dismiss and dismisses the complaint without prejudice. Bright Lite LLC must file any amended complaint within 21 days and must attach a blackline of the amended complaint against the original complaint.

This disposes of ECF No. 17.

**IT IS SO ORDERED.**

Dated: May 7, 2020

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California